UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BINGLI LIN, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-55-SDJ |
| | § | |
| UNITED STATES OF AMERICA, ET AL. | § | |
| | § | |
| | § | |

**MEMORANDUM ADOPTING IN PART THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiffs BingLi Lin, Chuangui Chen, Joanna Chen, and Din Tai Technology, LLC, sued the United States of America and Wells Fargo Bank, N.A., for the return of seized property, negligence, Freedom of Information Act ("FOIA") violations, a request for declaratory judgment, and other unspecified relief. (Dkt. #46).[1] Wells Fargo and the Government moved for dismissal of Plaintiffs' claims.

A federal magistrate judge issued a report and recommendation (hereafter, the "report") concluding that all Plaintiffs' claims should be dismissed, except for certain claims asserted under Federal Rule of Criminal Procedure 41(g) for the return of coins seized during the execution of search warrants. (Dkt. #74). For those Rule 41(g) claims, the magistrate judge recommended that the case be stayed for thirty days to allow the Government to institute forfeiture proceedings or any other judicial proceeding regarding the seized coins. (Dkt. #74 at 21).

---

[1] Plaintiffs' operative complaint is their Second Amended Complaint. (Dkt. #46).

1

At the time the magistrate judge's report was issued, it was unclear whether the Government's investigation of the seized coins remained ongoing and whether criminal proceedings would be instituted against Plaintiffs. After the Court ordered supplemental briefing on these issues, the Government confirmed that its investigation is complete and that no criminal proceedings will be pursued against Plaintiffs. The Government maintains, however, that Plaintiffs have no possessory interest in the seized coins as a matter of law because the evidence submitted with the Government's dismissal motion, including the United States Mint's analysis of the coins, establishes that the coins are counterfeit.

The Court adopts the Report and Recommendation on all points except the Rule 41(g) analysis and related conclusion concerning Plaintiffs' declaratory-judgment claim. *See* (Dkt. #74). The Court overrules Plaintiffs' objections, (Dkt. #75), and grants both Defendant Wells Fargo's Motion to Dismiss, (Dkt. #48), and the Government's Motion to Dismiss, (Dkt. #56), as to all claims asserted by Plaintiffs.

## I. BACKGROUND

Plaintiffs claim that they are in the business of importing salvaged United States coins from a recycling facility in China. (Dkt. #46 at 1). According to Plaintiffs, the coins are collected from dump yards and metal recycling shipments in China and shipped back to the United States to be redeemed by banks and coin-collecting machines. (Dkt. #46 at 1). Previous shipments from Plaintiffs have been seized by the Government and declared counterfeit by a federal district court. (Dkt. #46 at 2); (Dkt. #56-1); *see United States v. 5 Crates of Counterfeit Coins*, No. CV20-8487-MWF,

2022 WL 18456983 (C.D. Cal. Dec. 5, 2022), *aff'd*, No. 23-55075, 2023 WL 6474456 (9th Cir. July 3, 2023).

In September 2021, the Government executed six warrants issued by this Court against Plaintiffs. (Dkt. #18-1). During the searches, the Government seized several items, including around $150,000 in suspected counterfeit coins. (Dkt. #46 at 6–7, 14–16). Plaintiffs assert seven claims against the Government under Rule 41(g) for the return of seized property, as well as negligence and FOIA-violation claims. (Dkt. #46 at 14–17). Plaintiffs also seek a declaratory judgment that (1) "all property seized or detained . . . was not counterfeit," (2) "Plaintiff[s] did not engage in illegal acts," (3) Plaintiffs be removed "from all the blacklists [the Government] maintains regarding counterfeit coins," and (4) the Government notify all third parties that it was mistaken that Plaintiffs were counterfeiters. (Dkt. #46 at 19). The United States moved to dismiss under Rule 12(b)(1), (b)(3), and (b)(6), asserting that Plaintiffs lack standing, filed certain claims in the wrong venue, assert claims that are moot, and otherwise fail to assert facts that give rise to any liability on the part of the Government. (Dkt. #56).

Plaintiffs further claim that the United States Secret Service "communicated secretly" to Wells Fargo that Plaintiffs' bank account "may have fruits of illegal activity[.]" (Dkt. #46 at 17–18). They go on to assert that, as a result, Wells Fargo closed Plaintiff Din Tai Technology, LLC's ("DTT") bank account, in alleged violation of the bank's "duty of care" to the customer. (Dkt. #46 at 17–18). Wells Fargo moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs'

duty-of-care claim fails due to lack of standing and failure to state a cognizable legal claim or any factual basis to support its allegations. (Dkt. #48).

The Government claims, and Plaintiffs have confirmed, that it has returned all seized property except the coins. (Dkt. #67, #69). And as to the coins, the magistrate judge correctly held that Plaintiffs lack capacity to recover coins belonging to DTT and likewise cannot seek recovery in this Court of any coins seized at DFW airport. *See* (Dkt. #74 at 12–13) (explaining that Rule 41(g) requires that a motion for return of property "must be filed in the district where the property was seized," and that the Northern District of Texas is the proper venue to recover the ten boxes of coins seized at the airport and referenced in the so-called "Abady letter").

The report recommends that Wells Fargo's dismissal motion be granted and that Wells Fargo be dismissed. (Dkt. #74 at 9–10). The report further recommends that the Government's motion be granted as to (1) Plaintiffs' claims against the Government for return of property described in the "Abady letter," (2) Plaintiffs' negligence and FOIA claims, and (3) Plaintiffs' request for declarations that Plaintiffs are innocent of illegal acts and should be removed from "blacklists." (Dkt. #74 at 10–13, 16–21). For the reasons described in the report, the Court adopts these recommendations.

This Memorandum Opinion and Order addresses Plaintiffs' remaining Rule 41(g) claims concerning the return of coins seized during the execution of search warrants issued by this Court. As to these coins, the report recommends that the case be stayed for thirty days to allow the Government to institute forfeiture proceedings

or any other judicial proceeding regarding the coins. The report further recommends that, as to Plaintiffs' request for a declaratory judgment that the coins are not counterfeit, the Government's dismissal motion should be denied. (Dkt. #74 at 20). Because the Government has established that the seized coins are counterfeit, these recommendations are rejected.

## II. LEGAL STANDARD

### A. Rule 41(g)

Rule 41(g) allows "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return." FED. R. CRIM. P. 41(g).[2] "The Rule recognizes that the federal courts have equitable jurisdiction to order the return of property." *Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007). The Fifth Circuit has cautioned, however, that such jurisdiction should be exercised with "caution and restraint." *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) (citation and internal quotation marks omitted).

To prevail on a Rule 41(g) motion, the moving party must demonstrate that: "(1) [the party] is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Pinto-Thomaz*, 352 F.Supp.3d

---

[2] From its original adoption in 1944 until 2002, Rule 41 covered motions to return property under subdivision (e). In 2002, the motion-to-return provision was redesignated Rule 41(g). 3A *Wright & Miller's Federal Practice & Procedure* § 690 (4th ed. 2025). Courts have recognized that case law interpreting former Rule 41(e) generally applies to current Rule 41(g). *Id.*

287, 311 (S.D.N.Y. 2018).[3] The burden of proof for a Rule 41(g) motion turns on whether the property is part of an ongoing criminal investigation or proceeding. *See United States v. Oduu*, 564 F.App'x 127, 130 (5th Cir. 2014) (per curiam) (explaining which party bears the evidentiary burden under Rule 41(g)). When the property remains part of an ongoing criminal investigation or proceeding, the movant bears the burden of proof to show that he or she is entitled to the property. *Oduu*, 564 F.App'x at 130 (citing *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999)). "But when criminal proceedings have ended, that burden shifts to the Government." *Id.*; *see also United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (the "burden of proof changes when the property in question is no longer needed for evidentiary purposes, either because trial is complete, the defendant has pleaded guilty, or . . . the government has abandoned its investigation") (internal quotation marks omitted).

The Fifth Circuit has recognized that Rule 41(g) motions filed after criminal proceedings have concluded should be treated as a civil action under 28 U.S.C. § 1331. *Oduu*, 564 F.App'x at 130; *see also Serrano v. Customs & Border Patrol, U.S. Customs & Border Patrol*, 975 F.3d 488, 499 (5th Cir. 2020) (same); *Lavin v. United*

---

[3] The Fifth Circuit has provided guidance on additional considerations applicable to cases involving a suit for the return of property "prior to the initiation of any civil or criminal proceedings flowing from the seizure of property." *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975). Such considerations include whether "the motion for return of property accurately alleges that government agents . . . in seizing the property displayed a callous disregard for the constitutional rights of the [plaintiff]," the plaintiff's "individual interest in and need for the material" to be returned, whether the plaintiff "would be irreparably injured by denial of the return of the property," and whether an adequate remedy at law is available to address plaintiff's grievance. *Id.* at 1243–44; *see also Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) (same).

6

*States*, 299 F.3d 123, 127 (2d Cir. 2002) (explaining that, once a criminal case has concluded, courts construe a Rule 41(g) motion as "initiating a civil action in equity"). The denial of such a post-criminal-proceeding Rule 41(g) motion is treated as a grant of summary judgment in favor of the Government. *Oduu*, 564 F.App'x at 130 (citing *Clymore v. United States*, 217 F.3d 370, 373 (5th Cir. 2000)).

### B. No Possessory Interest in Contraband

"The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *Cooper v. City of Greenwood*, 904 F.2d 302, 304 (5th Cir. 1990) (citation and internal quotation marks omitted). Contraband is of two types: contraband *per se* and derivative contraband. Contraband *per se* consists of objects which are "intrinsically illegal in character," "the possession of which, without more, constitutes a crime." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). Derivative contraband "includes items which are not inherently unlawful but which may become unlawful because of the use to which they are put—for example, an automobile used in a bank robbery." *Cooper*, 904 F.2d at 305.

The seized coins at issue here, if established to be counterfeits, are contraband *per se*. The forfeiture statute provides that "[a]ll counterfeits of any coins . . . of the United States . . . shall be forfeited to the United States." 18 U.S.C. § 492. In addition, 49 U.S.C. § 80302 defines counterfeit coins as contraband. 49 U.S.C. § 80302(a)(3)(A) (explaining that contraband includes "a forged, altered, or counterfeit . . . coin or an

7

obligation or other security of the United States Government"). "Items that are considered 'contraband' or 'counterfeit' under Section 492 are deemed illegal *per se* and automatically forfeited without having to satisfy the otherwise applicable forfeiture procedures." *United States v. Von Nothaus*, No. 5:09CR27-RLV, 2014 WL 6750312, at *6 (W.D.N.C. Dec. 1, 2014); *see also Boggs v. Merletti*, 987 F.Supp. 1, 10 (D.D.C. 1997) (same). Courts will not consider a claim contesting the confiscation of contraband *per se* because "one cannot have a property right in that which is not subject to legal possession." *Cooper*, 904 F.2d at 305; *see also, e.g.*, *Oquendo v. City of New York*, 492 F.Supp.3d 20, 29 (E.D.N.Y. 2020) ("It is blackletter law that an individual does not have a possessory interest in contraband.").

*   *   *   *

The framework for evaluating Rule 41(g) motions is unusual, to be sure. As presented here, the Court construes Plaintiffs' motion as arising after the Government's criminal investigation had concluded. Accordingly, the motion will be treated as a civil action under 28 U.S.C. § 1331, invoking the Court's equitable power to return property. In its dismissal motion the Government argues that, because the coins are counterfeit, they are forfeited as a matter of law and Plaintiffs have no legitimate interest in them. In this post-criminal-investigation equitable proceeding, the Government has the burden of proof to show that the coins are contraband.

## III. DISCUSSION

### A. Rule 41(g) and Related Declaratory Judgment Claims

The Government's Rule 12(b)(1) dismissal motion argues that, because the seized coins are counterfeit, Plaintiffs have no legal right to possess them and no

8

standing to seek their return. A motion to dismiss for lack of standing may be either "facial" or "factual." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). An attack is "factual" rather than "facial" if the defendant "submits affidavits, testimony, or other evidentiary materials." *Id.*

The Government's motion to dismiss is factual. It has provided proof that the seized coins are counterfeit and therefore contraband *per se* that cannot be returned to Plaintiffs. The United States Mint (the "Mint") conducted an analysis of a representative sample of the seized coins. The Mint tested the coins' electromagnetic properties, chemical properties, and analyzed the struck image and accompanying surface features of the coins. Based on that analysis, the Mint found the sample of coins to be inconsistent with the visual/physical characteristics, chemistry, and physics of U.S. coinage. These conclusions were made at a 99.9% confidence interval. (Dkt. #56–2) (Declaration of J.B. Christian with Laboratory Report). The Government's methodology and findings are consistent with findings accepted by courts in prior cases, including a case involving these same Plaintiffs. *See 5 Crates of Counterfeit Coins*, 2022 WL 18456983, at *1–3. In *5 Crates*, the Eastern District of California accepted a similar analysis to the methodology employed here. *See id.*; (Dkt. #56 at 11); (Dkt. #56-1 at 4–5).

In response, Plaintiffs failed to provide any affirmative evidence to the contrary. Instead, Plaintiffs submitted a report from their own expert that merely attempts to challenge the Mint's methodology and process as unreliable by levying objections with little to no explanation as to their relevance. For example, Plaintiffs'

report objects that "[t]here is no explanation why it took one year and one month from the last test until the [Mint's] report was created and signed." (Dkt. #60-1 at 1). However, Plaintiffs do not explain the relevance of this observation or how it casts doubt on the Mint report's validity. And, as described in the Government expert's declaration, all the testing that forms the basis of the Mint's report was performed within a month after the Mint received the samples. (Dkt. #56–2 ¶ 8).

Plaintiffs, through their expert, also complain that the Mint's report did not include the raw data supporting the test results on the coins. But as the Government correctly notes, it is unsurprising that the Mint's report does not include raw data, particularly as to genuine coins and Mint specifications, because publicizing such specific data concerning genuine currency would serve as a blueprint to other counterfeiters. Further, the Mint's report, together with the declaration of its expert who performed the analysis, outlines the thoroughness of its testing, which included twelve separate tests on each coin covering three test areas—physical, chemistry, and physics—resulting in the conclusion that the seized coins did not occupy the same data space as authentic coins. (Dkt. #56–2 ¶¶ 16–18). Plaintiffs present no meaningful challenge to the Mint's testing method or its conclusions.[4]

---

[4] Plaintiffs' expert suggests that the weights and compositions of the coins in this case were consistent with standard currency, undermining the Mint's conclusions. (Dkt. #60–1). But the weight and composition of coins are publicly available in a statute, 31 U.S.C. § 5112, and therefore may be mimicked. Such an appearance of consistency with genuine coins does not mean that the coins are genuine. In this regard, Plaintiffs have no answer to the Mint report's analysis demonstrating that the coins at issue were made by a manufacturer other than the Mint. (Dkt. #56–2 at 10) (Figure 3).

10

As explained herein, *see supra* Part II.A, the denial of a post-criminal-proceeding Rule 41(g) motion is treated as a grant of summary judgment in favor of the Government. Summary judgment is not proper if the nonmovant shows that there are genuine disputes of material fact and the movant is not entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Tolan v. Cotton*, 572 U.S. 650, 656–57, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014). To show that the asserted facts are genuinely disputed, the nonmovant must show that (1) the materials cited by the movant do not establish the absence of a genuine dispute or (2) the movant cannot produce admissible evidence to support the material fact. FED. R. CIV. P. 56(c)(1)(B).

The Government has presented admissible evidence with its dismissal motion that conclusively establishes the coins at issue are not genuine, and Plaintiffs have failed to present any evidence that undermines this finding or shows that there is a genuine issue of material fact. The Court concludes that the seized coins are counterfeit. As such, the coins are contraband and Plaintiffs have no lawful right to possess them. *See Boggs*, 987 F.Supp. at 10 ("Individuals have no property right in contraband materials and contraband materials may not be returned to them."). The Government's motion to dismiss Plaintiffs' Rule 41(g) motion as to the seized coins is granted.

Plaintiffs' request for a declaratory judgment that the coins are not counterfeit is also dismissed. The Declaratory Judgment Act does not extend the jurisdiction of federal courts; it only enlarges the range of potential remedies available. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)

11

("The operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.") (cleaned up); *see also Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 938 (5th Cir. 2012) (same). The Declaratory Judgment Act does not establish an independent basis for subject-matter jurisdiction. *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001). Instead, in a case asserting a claim under the Declaratory Judgment Act, the cause of action that provides a footing for the court to exercise subject-matter jurisdiction "must arise under some other federal law." *Id.* (quotation omitted). Here, Plaintiffs have no standing to assert any claim regarding the seized coins, which the Court has determined are counterfeit. Accordingly, the Court lacks jurisdiction over Plaintiffs' request for a declaratory judgment that the coins are not counterfeit.

## B. Plaintiffs' Objections

Plaintiffs made objections to the Magistrate Judge's Report and Recommendation. As to the objections to the portions of the report adopted by the Court, a de novo review was conducted of the objections and the portions of the report to which Plaintiffs specifically object, and the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and that the objections are without merit as to the ultimate findings of the Magistrate Judge. As to the objections leveled by Plaintiffs to the findings and recommendations of the report that have been rejected by the Court, such objections are overruled as moot given the Court's holdings in this order.

12

## IV. CONCLUSION

It is **ORDERED** that the Report and Recommendation of the United States Magistrate Judge, (Dkt. #74), is **ADOPTED in part** and **MODIFIED in part**. The Court adopts the following findings and conclusions:

- Plaintiffs lacked capacity to represent DTT's interest as pro se plaintiffs in federal court and lacked standing for their claims against Wells Fargo.

- Plaintiffs' Rule 41(g) claims are moot as to all property that has already been returned, and Plaintiffs lack standing to assert any Rule 41(g) claims based on property described in the Abady letter.

- Plaintiffs' negligence claim fails due to failure to exhaust administrative remedies.

- Plaintiffs' FOIA claim fails due to lack of jurisdiction.

The Court modifies the following findings and conclusions:

- Plaintiffs' Rule 41(g) motion as to the coins seized during execution of the search warrants is construed to arise after the Government's criminal investigation had concluded. Accordingly, the motion is treated as a civil action under 28 U.S.C. § 1331, invoking the Court's equitable power to return property.

- The Court finds that the Government has established that the coins are counterfeit. Under 18 U.S.C. § 492, the coins are forfeited to the United States as a matter of law. Plaintiffs' Rule 41(g) motion as to the coins is **DISMISSED**.

13

- The Court **DISMISSES** all of Plaintiffs' requests for declaratory relief. There is no underlying claim on which to support a declaratory judgment action.

It is therefore **ORDERED** that Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Second Amended Complaint, (Dkt. #46), and Brief in Support, (Dkt. #48), is **GRANTED** and that Plaintiffs' claims against Wells Fargo are **DISMISSED**.

It is further **ORDERED** that Defendant United States's Motion to Dismiss, (Dkt. #56), is **GRANTED** and that Plaintiffs' claims against the United States are **DISMISSED**.

A final judgment will follow by separate order.

**So ORDERED and SIGNED this 25th day of March, 2026.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

14